# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| GEORGE KEITH CLARK,         ) | |
|        Plaintiff,           ) | |
|                             ) | |
|     v.                      ) | 2:20-cv-00692-LSC |
|                             ) | |
| UNITED STATES OF            ) | |
| AMERICA,                    ) | |
|                             ) | |
|        Defendant.           ) | |

## MEMORANDUM OF OPINION

Plaintiff George Keith Clark ("Clark" or "Plaintiff") brings this action against Defendant the United States of America ("United States" or "Defendant"). Plaintiff brings claims against Defendant pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("FTCA"), and 38 U.S.C. § 7316 for negligence, assault, battery, and intentional infliction of emotion distress. Before the Court is Defendant's Motion to Dismiss (doc. 17), Plaintiff's Motion to Strike (doc. 21) and Plaintiff's Amended Motion to Strike (doc. 24). The motions are fully briefed and are ripe for review.[1] For the reasons stated below, Defendant's motion is due to be

---

[1] Defendant moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. However, Defendant only briefed the issue of subject matter jurisdiction. As such, this Court makes no determination as to whether Plaintiff states a claim upon which relief may be granted.

GRANTED. Plaintiff's motion to strike (doc. 21) is due to be TERMINATED AS MOOT. Plaintiff's amended motion to strike (doc. 24) is due to be DENIED IN PART.[2]

I.  **BACKGROUND**[3]

On January 23, 2017, Clark underwent a triple bypass, open heart surgery at the VA hospital in Birmingham, Alabama. (doc. 15 at 3.) After surgery, Clark recovered in the cardiovascular intensive care unit. *Id.* As part of his post-surgery care, medical staff inserted a breathing tube in Clark's mouth and restrained Clark's feet and hands using a bed restraint system. *Id.* at 4. Thus, Clark communicated his needs to the nursing staff largely through physical movements such as wiggling his fingers and toes.

Clark alleges that in the course of his post-surgery care, a nurse ("Nurse") on the night staff engaged in inappropriate conduct. Specifically, Nurse contorted Clark's fingers after he wiggled them for assistance, squeezed Clark's toes, and

---

[2] The Court granted in part Plaintiff's motion on January 20, 2021, as the Court allowed Plaintiff to file a surreply. (*See* doc. 26.)

[3] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Loc. Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)). The following facts are, therefore, taken from the allegations contained in Plaintiff's First Amended Complaint, and the Court makes no ruling on their veracity.

sexually assaulted Clark under the guise of a bath. *Id.* at 8, 10, 12–13. Clark spoke with supervisory staff regarding Nurse's conduct; however, he did not inform supervisors of the specific conduct alleged in his complaint. *Id.* at 13–14.

Clark filed an administrative claim with the VA office on July 13, 2018. Id. at 2. The VA denied his claim on November 21, 2019. Id. Thereafter, Clark filed his Complaint and First Amended Complaint alleging claims of negligence, assault, battery, and intentional infliction of emotional distress under 28 U.S.C. § 1346(b) and 38 U.S.C. § 7316. (doc. 15.) Defendant moved to dismiss Clark's First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, alleging that Clark's claims were barred by the intentional torts exception to the FTCA and the discretionary function exception to the FTCA. (doc. 17.)

Subsequently, Clark moved to strike in part Defendant's reply brief to Clark's response to Defendant's motion to dismiss. (doc. 21.) This Court granted Clark the opportunity to file a surreply to address the applicability of the discretionary function exception to Clark's claims. (doc. 27.)

## II.    STANDARDS OF REVIEW

A motion to dismiss for lack of subject-matter jurisdiction filed pursuant to Rule 12 (b) (1) of the Federal Rules of Civil Procedure challenges a court's statutory

or constitutional power to adjudicate a case. Motions to dismiss under Rule 12 (b) (1) may take the form of either a facial or a factual attack. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). Under a facial attack, the allegations in the complaint are taken as true for the purposes of the motion. *Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994). A factual challenge, on the other hand, questions the existence of subject matter jurisdiction based on matters outside the pleadings. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Under a factual challenge, this Court may hear conflicting evidence and decide factual issues that determine jurisdiction. *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).

### III.   DISCUSSION

"[T]he United States, as sovereign, is 'immune from suit save as it consents to be sued … and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). Through the FTCA, Congress waived the United States' sovereign immunity for claims arising from "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of federal employees operating within the scope of their employment. 28 U.S.C. § 1346(b)(1) (2018).

However, several exceptions abrogate the FTCA's waiver of immunity. *See id.* § 2680 (2018). When such an exception applies, this Court is deprived of subject matter jurisdiction and may not "entertain the suit." *Hercules, Inc.*, 516 U.S. at 422. Defendant seeks to dismiss Clark's First Amended Complaint, arguing that (1) the discretionary function exception to the FTCA bars Clark's claim of negligence and (2) the intentional tort exception bars all intentional torts alleged by Clark. *See* 28 U.S.C. §§ 2680(a), (h).

### A. Negligence (Count I) & the Discretionary Function Exception

The discretionary function exception bars government liability for "[a]ny claim based upon…. the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(h). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Swafford v. United States*, 839 F.3d 1365, 1369–70 (11th Cir. 2016) (citing *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984)). This exception must be strictly construed in favor of the Government. *Id.* (citing *U.S. Aviation Underwriters, Inc. v. United States*, 562 F.3d 1297, 1299 (11th Cir. 2009)). To determine if conduct falls within the discretionary

function exception, this Court utilizes a two-part test. *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). If both prongs are satisfied, the discretionary function exception applies, and this Court does not have subject matter jurisdiction to hear the case. *Id*.

First, this Court looks to the nature of the alleged conduct and whether it involves an element of judgment or choice. This requirement is not satisfied if a "federal statute, regulation or policy specifically prescribes a course of action for an employee to follow,' because 'the employee had no rightful option but to adhere to the directive.'" *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Second, this Court considers whether the challenged conduct was grounded in decisions of "social, economic, and political policy." *Id.* at 323. The second prong is rooted in our Constitution's separation of powers as a means to avoid "judicial 'second guessing' of legislative and administrative actions." *Id* (quoting United States v. Gaubert, 499 U.S. 315, 323 (1991)).

Clark cites 38 C.F.R. § 1.218 (a) (16) as the regulatory basis for a prescribed course of conduct. This regulation states, in pertinent part, as follows:

> Any act of sexual gratification on VA property involving two or more persons, who do not reside in quarters on the property, is prohibited. Acts of prostitution or solicitation for acts of prostitution on VA property is prohibited.
> 38 C.F.R. § 1.218(a)(16) (2018).

In subsequent sections, the regulation vests the VA facility's administration directors with the power to issue policies and govern the exercise of law enforcement action. *Id*. § 1.218(c)(1). Moreover, the regulation prescribes various methods of enforcement and penalties for its violation which range from arrest and removal to a fine of $250.00 for "unlawful sexual activity." *See id*. §§ 1.218 (b)(1)–(44).

Clark's negligence claim is predicated upon what he believes to be an inadequate response from the VA facility's directors to Nurse's alleged tortious conduct. (doc. 15 at 17.) However, the regulation at issue provides the facility directors with broad discretion to respond to alleged violations as they best see fit. *See Coltharp v. United States*, 413 F. Supp. 3d 1182, 1189 (M.D. Ala. 2019) ("[A] review of VA regulations and internal agency guidelines demonstrate that VA staff retain wide discretion in implementing security policies and handling [inappropriate conduct]."); *see also United States v. Renfro*, 702 F. App'x 799, 807 (11th Cir. 2017) (finding a police officer's enforcement of a VA regulatory provision to be a discretionary decision). Thus, the facility director's decision to respond to alleged statutory violations reflects judgment or choice; the first prong of the discretionary function analysis is satisfied.

For the second prong of the discretionary function analysis, this Court does not consider whether the VA employees actually weighed policy considerations

before deciding a course of conduct. *Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006). Instead, the analysis turns on whether the decision is the type that is susceptible to policy analysis. *Id*. In the present matter, the "relevant exercises of discretion" include the supervision of nursing staff and the imposition of safety and security mechanisms at the VA hospital. (doc. 24 at 5 n.4.)

These considerations necessarily entail policy analysis. *See Coltharp*, 413 F. Supp. 3d at 1190. In *Coltharp*, a patient sued the VA alleging a breach of the duty of care to protect for failing to have proper security measures after another patient assaulted her. *Id*. at 1185. As decisions regarding "assessment, admission, assignment, placement, and removal of patients" are grounded in economic and social policy, the allegedly negligent conduct fell within the FTCA's discretionary exception. *Id*. Central to that decision was the belief that the VA staff is in the "best decision" to regulate patient care and safety. *Id*.

Therefore, decisions regarding safety are rooted in the very policy considerations the discretionary function exception encompasses. *Id*.; *see also Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997) ("Decisions involving security… are a fundamental part of the economic and social policy analysis required to achieve these goals."). While Clark may find the security measures in place at the VA

hospital inadequate, these decisions ultimately reflect a series of cost-benefit analyses and social policy decisions.

Mr. Clark argues that the discretionary function exception is inapplicable "when the government undertakes to provide a service, induces reliance on that service, and then subsequently creates a dangerous situation or increases the risk of harm in providing that service." (doc. 27 at 2.) In support of this argument, Mr. Clark cites a string of cases such as *Indian Towing Co. v. U.S.*, 350 US. 61 (1955); *Swafford v. U.S.*, 839 F.3d 1365 (11thCir. 2016); and *Rise v. U.S.*, 630 F.2d 1068 (5th Cir. 1980). Mr. Clark is correct about the general principle. When the government undertakes a service and induces reliance, failure to exercise due care does not involve any permissible exercise of policy judgment. However, Mr. Clark is incorrect that this occurred in the case at bar.

Here, the VA undertook to provide Mr. Clark with medical care. Specifically, the VA performed a triple bypass, open heart surgery. (doc 15 at 3.) The VA had a duty to provide that heart surgery and the post-operation medical care in a non-negligent manner. However, Mr. Clark makes no claim about the medical care he received. Rather, Mr. Clark's negligence claim is based on a supposed failure to guard or protect Mr. Clark from intentional torts and criminal acts of third parties. Yet, the VA did not undertake this service. In *Indian Towing*, *Swafford*, and *Rise*, the

failure to competently provide the service was the direct cause of the harm. *See Indian Towing*, 350 U.S. at 69 (finding that after the Coast Guard built a lighthouse and induced reliance upon it, the Coast Guard had a non-discretionary duty to keep it in working order); *Swafford*, 839 F.3d at 1371 (finding that after the Army Corp of Engineers decided to build a staircase, it had a duty to inspect and maintain that staircase in a safe condition); *Rise*, 630 F.2d at 1072 (finding that the transfer of plaintiff to another hospital was part of the medical care that the Army undertook to provide and did not involve a discretionary decision). Here, the alleged harm was caused by the intentional act of Nurse, a third party to this lawsuit. As stated above, the extent of protection offered by security measures ultimately reflects a series of cost-benefit analyses and social policy decisions which brings this claim under the discretionary function exception.

Mr. Clark also argues that the discretionary function does not apply to situations in which the government fails to act after notice of illegal behavior. (do. 27 at 1.) In support of this argument, Mr. Clark cites *Brignac v. U.S.*, 239 F.Supp.3d 1367 (N.D. Ga. 2017) and *Tonelli v. U.S.*, 60 F.3d 492 (8th Cir. 1995). Mr. Clark is again correct about the general principle but is incorrect that it applies here. In both *Brignac* and *Tonelli*, the prior illegal behavior was the exact same as the behavior alleged in the lawsuit. 239 F.Supp.3d at 1381–82 (holding that the discretionary function exception

did not apply when the government knew a doctor sexually preyed upon patients before hiring him and the doctor continued to sexually prey upon patients after being hired); 60 F.3d at 496 (holding that the discretionary function exception did not apply when the post office had notice that one of its employees was sifting through mail and removing items and did nothing about it). In other words, the government was on notice because the same illegal behavior had already occurred. This is not the case here. Mr. Clark claims that Nurse engaged in a consensual sexual encounter with a student nurse in violation of 38 C.F.R. § 1.218(a)(16). Even if true, consensual sex with a student nurse would not be enough to put the VA on notice that Nurse might sexually assault Mr. Clark. There is a clear difference between a consensual sexual encounter and sexual assault. Given that the discretionary function exception must be construed strictly in favor of the government, this Court finds that the discretionary function exception applies as the VA was not on notice of a potential sexual assault.

Accordingly, the second prong of the discretionary exception analysis is met. Therefore, Defendant's motion to dismiss for lack of subject matter jurisdiction is due to be granted as to Clark's negligence claim.[4] This Court is neither inclined nor

---

[4] This claim is dismissed without prejudice and Mr. Clark will have 10 days ten days to amend his complaint if he contends that he is able to properly and sufficiently allege that the VA had notice that Nurse might sexually assault patients.

able to undermine the VA's decisions regarding the location of security personnel, security measures regarding hospital access, or security measures regarding the supervision of its staff. As a result, Defendant's motion to dismiss is due to be GRANTED as to the negligence claim.

### B. Intentional Torts (Counts II, III, & IV) & the Intentional Tort Exception

The "intentional tort exception" maintains the Government's immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Congress enacted agency-specific exceptions to the intentional tort exception, reinstating the immunity waiver for intentional torts in certain contexts. Within the VA context, "section 2680(h) of title 28 shall not apply to any claim arising out of a negligent or wrongful act or omission of any person… in furnishing medical care or treatment… while in the exercise of such person's duties in or for the Administration." 38 U.S.C. § 7316(f) (2018) ("VA Immunity Statute").

The Defendant argues this Court lacks subject matter jurisdiction under the VA Immunity Statute for two reasons. First, Defendant contends that Nurse was outside the line and scope of his employment when the alleged tortious conduct occurred. (doc. 17 at 12.) Second, Defendant suggests that the intentional torts at

issue do not fall within the scope of the VA Immunity Statute based on its plain language and legislative history. *Id.* at 9.

### 1. Line and Scope of Employment

The FTCA holds the United States liable to the same extent as a private individual under the law of the place where the tort occurred. *Levin v. United States*, 568 U.S. 503, 506–07 (2013). Thus, the question of whether Nurse was operating within the line and scope of his employment is governed by the laws of Alabama, the state where the incident occurred. *Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir. 1996) ("The question of whether an employee's conduct was within the scope of his employment is governed by the law of the state where the incident occurred.").

#### i. The Alleged Sexual Assault

Alabama caselaw regarding employer liability for sexual assault is clear. Sexual misconduct is "personal to the employee and outside of the scope of employment." *E. Alabama Behavioral Med., P.C. v. Chancy*, 883 So. 2d 162, 169 (Ala. 2003); *see also Doe v. Swift*, 570 So. 2d 1209, 1212 (Ala. 1990) ("We have carefully reviewed the cases cited by the plaintiff as authority for the proposition that 'sexual acts can be in the line and scope of one's employment.' We are not persuaded by the holdings in these cases."); *Hendley v. Springhill Mem'l Hosp.*, 575 So. 2d 547, 548–49 (Ala. 1990) ("[T]he sexual assault alleged, by its very nature, was not an act which was fairly

incident to the [employer/employee] relationship, nor was it in promotion of… [the agent's] duties.").

Moreover, when an employee abandons his employer's business in pursuit of personal benefit, the employer is not liable for its employee's conduct. *Hendley*, 575 So. 2d at 550. Within Clark's First Amended Complaint, Clark stated that Nurse received "personal sexual gratification from bathing him." (doc. 15 at 12.) Thus, by Clark's own words, Nurse was outside the scope of his employment at the time the alleged sexual assault occurred.

Even if this Court were to ignore the language of Clark's First Amended Complaint and the clear limitations of employer liability under Alabama law, this Court lacks subject matter jurisdiction for another reason. Plaintiff correctly notes that if there is "any evidence…. tending to show… that the tortious conduct of the employee was committed while performing duties assigned to him," then the question of employer liability becomes one for the jury. *Hendley*, 575 So. 2d at 550. However, if an actor's tortious conduct is "a very marked and unusual deviation" from his assigned duties, then the employee, as a matter of law, is not acting within the line and scope of his employment. *Id.* In *Hendley*, a member of the hospital's physical therapy department performed an unauthorized vaginal exam on a patient seeking treatment for coccyx (tailbone) pain. *Id.* at 549–50. The sexual assault was a

"gross deviation" from the reason for which the employee was in the patient's room; as such, he was outside the line and scope of his employment. *Id.* at 551.

*Hendley* is comparable to the case at bar. While Nurse was authorized to touch Clark within the context of performing a bath, Nurse grossly deviated from that authorization when he allegedly sexually assaulted Clark. Accordingly, to the extent that Clark asserts claims of battery and assault pertaining to the alleged sexual assault, such claims are due to be dismissed as this Court lacks subject matter jurisdiction. Therefore, Plaintiff's motion to dismiss is due to be GRANTED.

### ii. Other Alleged Assaults and Batteries

An employer is not liable for the tortious conduct of its employees when the employee acts with personal motives entirely unrelated to the interests of his employer. *Meyer v. Wal-Mart Stores, Inc.*, 813 So. 2d 832, 834–35 (Ala. 2001). When an employee's conduct is a "very marked and unusual deviation" from the employer's business, the employee is not acting within the line and scope of employment. *Synergies3 Tec Servs., LLC v. Corvo*, 319 So. 3d 1263, 1275 (Ala. 2020) By contrast, "[a]n employee's tortious acts occur within the scope of his employment if the acts are so closely connected with what the servant is employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the

employment." *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998); *see also March v. Best Buy Stores, LP*, 111 F. Supp. 3d 1236, 1247–48 (N.D. Ala. 2015). Generally, "an employer will not be held liable as a matter of law merely because the employment situation provided the opportunity for the servant's wrongful acts or the means to carry them out." *Bodin v. Vagshenian*, 462 F.3d 481, 486–87 (5th Cir. 2006) (internal quotations omitted) (holding that a VA physician's inappropriate and unnecessary examination of plaintiff's genitalia was outside the scope of his employment under Texas law because the physician's personal desire motivated the assaults).

Here, this Court finds that Nurse was not acting within the line and scope of his employment. Mr. Clark alleges that Nurse threatened him with injury, contorted his fingers after he wiggled them for assistance, and squeezed his toes. (doc. 15 at 8–10.) Each of these instances of assault and battery were motivated by personal animosity on behalf of Nurse. For example, Mr. Clark claims that:

> [t]he Nurse would demand that Mr. Clark speak more clearly. Although Mr. Clark tried, he couldn't make the Nurse understand, which caused the Nurse to become even more agitated. After Mr. Clark made two or three attempts to speak, the Nurse would grab Mr. Clark's right hand and bend his fingers backwards in an extreme and contorted fashion.

*Id.* at 8. Thus, by Mr. Clark's own words, Nurse was acting out of personal agitation towards his patient. Mr. Clark has essentially alleged that Nurse tortured him during

his time at the VA. If true, the torture of a patient is "entirely unrelated to the interests" of the VA and is motivated solely by personal desires. *Meyer*, 813 So. 2d at 834–35. Assaulting and torturing a patient is a "very marked and unusual deviation" from what Nurse was hired to do. *Corvo*, 319 So. 3d at 1275. Nurse was hired to provide medical care, not intentionally threaten and harm patients. Therefore, Nurse did not commit these assaults and batteries while in the line and scope of his employment. Accordingly, Defendant's motion to dismiss as to the nonsexual batteries is due to be GRANTED.

### 2. Language and History of the VA Immunity Statute

As mentioned above, this Court finds that Nurse was not acting within the line and scope of his employment. Thus, this Court need not address whether the intentional torts at issue fall within the scope of the VA Immunity Statute based on its plain language and legislative history. Accordingly, Defendant's motion to dismiss as to the nonsexual batteries is due to be GRANTED.

### C. Motions to Strike

Plaintiff filed a motion to strike part of Defendant's reply brief on January 8, 2021. (doc. 21.) Plaintiff claimed that Defendant failed to argue the discretionary function exception in its initial motion to dismiss and raised it only in their reply brief. *Id.* at 1–2. Plaintiff then filed an amended motion to strike on January 16, 2021,

adding an alternative remedy of being allowed to file a surreply. (doc. 24.) This Court granted Clark the opportunity to file a surreply to address the applicability of the discretionary function exception to Clark's claims. (doc. 27.) Regarding the amended motion to strike, this Court now finds that Defendant did argue the discretionary function exception in its initial motion to dismiss. In fact, Defendant raised the discretionary function argument in multiple places. (doc 17. at 1, 7–8, 14–16.) Accordingly, Plaintiff's amended motion to strike is due to be DENIED IN PART. Thus, Plaintiff's initial motion to strike (doc. 21) is due to TERMINATED AS MOOT.

## IV. Conclusion

For the reasons stated above, Defendant's motion to dismiss (doc. 17) is due to be GRANTED. Plaintiff's claim of negligence is due to be dismissed as barred by the FTCA's discretionary function exception.[5] Plaintiff's claims of assault and battery are due to be dismissed as barred by the intentional tort exception of the FTCA. Plaintiff's motion to strike (doc. 21) is due to be TERMINATED AS MOOT. Plaintiff's amended motion to strike (doc. 24) is due to be DENIED IN

---

[5] This claim is dismissed without prejudice and Mr. Clark will have 10 days ten days to amend his complaint if he contends that he is able to properly and sufficiently allege that the VA had notice that Nurse might sexually assault patients.

PART.[6] An Order consistent with this opinion will be entered contemporaneously herewith.

---

[6] The Court granted in part Plaintiff's motion on January 20, 2021, as the Court allowed Plaintiff to file a surreply. (*See* doc. 26.)